**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

KANSAS HEALTH POLICY AUTHORITY
Landon State Office Building
900 SW Jackson
9th Floor North
Topeka, KS 66612

*Plaintiff,*

v.

UNITED STATES DEPARTMENT
OF HEALTH AND HUMAN SERVICES
200 Independence Avenue S.W.
Washington, D.C. 20201

and

KATHLEEN SEBELIUS,
Secretary of the
United States Department of
Health and Human Services
200 Independence Avenue S.W.
Washington, D.C. 20201

*Defendants.*

**COMPLAINT**

**NATURE OF ACTION**

1. This Complaint for declaratory and injunctive relief is brought by the Kansas Health Policy Authority ("KHPA") regarding federal reimbursement for the State's Medicaid expenditures. The Medicaid program is governed by Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq*. Pursuant to Title XIX, the Medicaid program is administered by each State, with federal financial participation in the State's expenditures for medical assistance.

2. At issue is the scope of medical assistance that the Medicaid program provides to children receiving services in inpatient psychiatric facilities, referred to under Title XIX as "institutions for mental diseases" or "IMDs." KHPA believes that Medicaid-eligible children in IMDs are entitled to all Medicaid benefits, comparable to the benefits that Medicaid provides to children who are not in IMDs. The federal Centers for Medicare and Medicaid Services ("CMS") has taken the position that Medicaid may pay only for the costs of inpatient psychiatric services provided "in and by" the IMDs. Accordingly, CMS has "disallowed" and denied $3,883,143 of federal financial participation in KHPA's expenditures for a number of health care items and services provided to children in IMDs. Although the disallowance covers a period from July 1, 2007 to June 30, 2008, the dispute between the parties is ongoing and KHPA is at risk of additional disallowances in the future.

3. KHPA protested the disallowance in an appeal to the United States Department of Health and Human Services Departmental Appeals Board ("the DAB" or "the Board") on December 18, 2008, pursuant to Section 1116(e) of the Social Security Act (42 U.S.C. § 1316(e)). The DAB upheld the disallowance in a decision dated June 23, 2009. *Kansas Health Policy Authority*, DAB No. 2255 (June 23, 2009) (appended hereto as Exhibit 1).

4. KHPA asks this Court for a declaration that Defendants' disallowance of federal financial participation in necessary medical services to children in IMDs was arbitrary, capricious, an abuse of discretion, and otherwise contrary to law; a declaration that Title XIX of the Social Security Act does not limit federal funding for medical services to children in IMDs to inpatient psychiatric services; a declaration that CMS did not observe procedure required by law when it failed to engage in notice-and-comment rulemaking, or otherwise failed to give KHPA actual and timely notice of its position regarding reimbursement for services to children in IMDs

prior to issuing the disallowance; an injunction preventing CMS from enforcing or giving effect to DAB No. 2255; and an injunction ordering Defendants to rescind or restore to Kansas, as appropriate, the full amount of the disallowance (plus interest, if any).

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. Section 1331, which provides for original jurisdiction in suits involving questions arising under federal law.

6. This Court has venue under 28 U.S.C. Section 1391(e)(1) and (2).

7. Judicial review in this Court is authorized by 42 U.S.C. Section 1316(e)(2)(C), which provides for review in this Court of final decisions of the DAB regarding disallowances of claims for federal financial participation under title XIX of the Social Security Act. This appeal is filed within 60 days of the date of the DAB's decision.

8. Judicial review is also authorized by the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* ("APA"), which provides for review of "final agency actions." The June 23, 2009 decision sustaining the federal disallowance constitutes "final agency action" within the meaning of 5 U.S.C. Section 704.

9. KHPA's request for declaratory relief is authorized by 28 U.S.C. Sections 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure. There presently exists an actual controversy between the parties.

**PARTIES**

10. Plaintiff Kansas Health Policy Authority is a state agency responsible for administering the Medicaid program in the State of Kansas.

11. Defendant the United States Department of Health and Human Services ("HHS") is an executive branch agency of the United States. CMS is a federal agency within

HHS. Through CMS, HHS is the federal agency responsible for administering the Medicaid program.

12. Defendant Kathleen Sebelius is the Secretary of HHS. In that capacity, she is responsible for the overall administration of HHS. Secretary Sebelius is sued in her official capacity.

## FACTUAL AND LEGAL BACKGROUND

### A. Medicaid Funding for Services to Persons in Institutions for Mental Diseases

13. The Medicaid program, established in Title XIX of the Social Security Act ("SSA" or "Act"), is a cooperative state-federal program that enables States to provide medical assistance to certain families with dependent children, elderly, and disabled individuals whose income and resources are inadequate to pay for necessary medical services. *See* Act, § 1901 (42 U.S.C. § 1396). The Medicaid program is administered by each State in accordance with a Medicaid state plan that is reviewed and approved by the Defendants. *See id.*

14. The cost of providing Medicaid services is shared by the States and the federal government. Act, Section 1903(a)(1) (42 U.S.C. § 1396b(a)(1)). The federal government's share, or "federal medical assistance percentage," ranges from 50 to 83 percent. Act, Section 1905(b) (42 U.S.C. § 1396d(b)). From 2007 to 2008, the years in which KHPA provided the disputed services, the federal medical assistance percentage for Kansas ranged from 59.43 to 60.25 percent.

15. The federal government will share in the costs of "medical assistance," as that term is defined at Section 1905(a) of the Act (42 U.S.C. § 1396d(a)). When it enacted the Medicaid statute in 1965, Congress excluded inpatient psychiatric services for persons under 65 from the definition of "medical assistance." At what was then Section 1905(a)(15), the statute provided that the term "medical assistance" "does not include . . . . (B) any such payments with

respect to care or services for any individual who has not attained 65 years of age and who is a patient in an institution for . . . mental diseases." Social Security Amendments of 1965, Pub. L. 89-97, § 121, 79 Stat. 286, 352 (1965), *codified at* Act, § 1905(a) [hereinafter "IMD exclusion"].

16. The federal government has always participated in the cost of all Medicaid services provided to persons older than 65 who reside in IMDs, whether or not those services were provided in and by the IMD.

17. In 1968, Congress amended Title XIX to require Medicaid to cover "early and periodic screening and diagnosis of individuals who are eligible under the plan and are under the age of 21 to ascertain their physical and mental defects and such health care, treatment, and other measures to correct or ameliorate defects and chronic conditions discovered thereby[.]" Social Security Amendments of 1967, Pub. L. 90-248, § 302(a), 81 Stat. 821, 929 (1968), *codified at* Act, § 1905(a)(4)(B) (42 U.S.C. § 1396d(a)(4)(B)). This provision became known as the Early and Periodic Screening, Diagnosis, and Treatment ("EPSDT") benefit.

18. In 1972, Congress again expanded Medicaid to include coverage for services to children in IMDs by adding a new paragraph (16) to the definition of "medical assistance" to include "inpatient psychiatric hospital services for individuals under age 21." Social Security Amendments of 1972, Pub. L. 92-603, § 299B, 86 Stat. 1329, 1460-61, *codified at* Act, § 1905(a)(16) (42 U.S.C. § 1396d(a)(16)). Congress also changed the wording of the IMD exclusion so that it now states that "except as otherwise provided in paragraph (16)" — the newly added service — the term "medical assistance" "does not include . . . . (B) any such payments with respect to care or services for any individual who has not attained 65 years of age and who is a patient in an institution for mental diseases." Act, Section 1905(a) (42 U.S.C. § 1396d(a)); *see* Pub. L. 92-603, § 299B(c), 86 Stat. at 1461. Congress also enacted provisions

designed to ensure that the new service would meet certain standards. It required, as a condition for federal funding, that the new service involve "active treatment" that a team of physicians and other qualified personnel had determined to be necessary and reasonably likely to lead to improvement of the child's condition. Pub. L. 92-603, § 299B(b), 86 Stat. at 1461, *codified at* Act, Section 1905(h) (42 U.S.C. § 1396d(h)).

19. In 1989, Congress clarified that children receiving the EPSDT benefit should receive all services that could be provided as "medical assistance," whether or not States had elected to include these services in their State plans. It did so by adding a definition of the EPSDT benefit at subsection (r) of Section 1905 of the Act. Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, § 6403(a), 103 Stat. 2106, 2263 (1989), *codified at* Act, § 1905(r) (42 U.S.C. 1396d(r)). New subsection 1905(r)(5) provided that EPSDT must include "[s]uch other necessary health care, diagnostic services, treatment, and other measures described in section 1905(a) to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan." *Id.*

20. "Inpatient psychiatric services for individuals under age 21" is an optional Medicaid service that States need not include in their State plans. *See* Act, Section 1902(a)(10)(A) (42 U.S.C. § 1396a(a)(10)(A)). But because the EPSDT benefit requires States to provide children with all the Medicaid services they need, each State must provide inpatient psychiatric services to children who need them, whether or not it has included this service in its State plan.

21. After Congress expanded Medicaid to cover inpatient psychiatric services for children, Defendants published regulations and guidance in various formats describing or

referring to such service. *See, e.g.*, *State Medicaid Manual* §§ 4442.3, 4442.8 (1988 to present); *State Medicaid Manual* § 4390 (1985 to present); 42 C.F.R. § 435.1009 (2006-2008); 42 C.F.R. § 441.13 (1978-2008); 42 C.F.R. §435.1008 (1978-2006); "MSA Medical Assistance Manual: Inpatient Psychiatric Services for Individuals Under Age 21," Action Transmittal SRS-AT-147 (MSA) (Sept. 22, 1976); *Medical Assistance Manual* § 4-50-00 (July 8, 1976); 45 C.F.R. § 249.10(c)(1976); 45 C.F.R. § 248.4 (1974); 45 C.F.R. § 248.60 (1974). At no point, however, have Defendants stated in clear, unequivocal terms in their regulations or other guidance disseminated to KHPA that Medicaid funding is available *only* for inpatient psychiatric services, and not for any other health care items or services provided to children in IMDs, even if Medicaid would pay for the item or service for all other Medicaid-eligible children.

### B. DAB Decisions Interpreting the IMD Exclusion

22. In 2001, the Department of Health and Human Services' Office of the Inspector General ("OIG") initiated a series of audits of States' claims for federal financial participation in the cost of providing medical assistance to children under age 21 in IMDs. The auditors took the position that, because of the IMD exclusion, the federal government should pay *only* for inpatient psychiatric services provided to children in IMDs and should not pay for any other health care services children needed while they were in an IMD. The OIG eventually recommended disallowances of the federal share of the costs of all medical services provided to IMD residents under age 21 in each of the seven States it audited: Pennsylvania, California, New Jersey, New York, Texas, Florida, and Virginia.

23. In 2007, the Board ruled on New York's appeal of a disallowance that CMS had issued based on the results of the OIG audits of services provided to children residing in IMDs. *See New York State Department of Health*, DAB No. 2066 (Feb. 7, 2007). New York contended that the interpretation on which the OIG and CMS relied represented a change in

longstanding policy inconsistent with the legislative history of the IMD exclusion. *See id.* at 2. The Board upheld CMS's interpretation of the IMD exclusion, but it also indicated that "inpatient psychiatric services to individuals under age 21" included medical care provided in and by the IMD, if that medical care fell within the scope of a child's inpatient psychiatric treatment plan. *See id.* at 4. New York did not seek judicial review of DAB No. 2066.

24. Virginia also appealed a disallowance based on the OIG audits of State claims for federal financial participation in inpatient psychiatric services provided to children residing in IMDs. In a decision dated December 31, 2008, the Board upheld the disallowance. *See Virginia Department of Medical Assistance [Services]*, DAB No. 2222 (Dec. 31, 2008). As it did in the New York appeal, the Board held that the plain wording of the IMD exclusion unambiguously provides that federal funds are available for services provided to children under age 21 residing in IMDs only if those services are provided in and by the IMD. *See id.* at 8-10.

25. On April 1, 2009, the Board upheld in part and reversed in part a disallowance assessed against Texas, which was also based on one of the 2001-2002 OIG audits. In Decision No. 2237, *Texas Health and Human Services Commission*, the Board again affirmed CMS's interpretation of the IMD exclusion. *See* DAB No. 2237, at 7-13. However, it also found that some of Texas's disallowed claims were allowable, even though they had been submitted by individual physicians rather than IMDs. *See id.* at 14-33. In reaching this conclusion, the Board rejected CMS's argument that only IMDs could bill Medicaid for inpatient psychiatric services for children under age 21, and noted that Texas had submitted information indicating that at least some of the challenged claims were for services provided in the IMDs. *See id.* at 17-18, 19-27.

### C. Kansas's State Plan Reimbursement Methodology for Residential Treatment Facilities

26. Since 1976, CMS, through regulation, has provided that inpatient psychiatric services to children under 21 (or, in some cases, under 22) may be provided in facilities other than psychiatric hospitals or psychiatric wings of general acute-care hospitals. *See* 63 Fed. Reg. 64,195, 64,196 (Nov. 19, 1998); 42 C.F.R. § 441.151. Such "psychiatric residential treatment facilities" ("PRTFs") provide an opportunity for making inpatient psychiatric services available in a less restrictive and more integrated setting than a traditional psychiatric hospital.

27. During 2006, KHPA approached CMS regarding a potential State plan amendment ("SPA") relating to coverage, payments and limitations for services provided by PRTFs to Medicaid-eligible children receiving inpatient psychiatric services. Of particular concern to KHPA were the costs for "health care services" — *i.e.*, all medically necessary health care services covered by Medicaid other than mental health and substance abuse treatment services — incurred by PRTFs on behalf of such residents.

28. At that time, Kansas covered the costs of mental health and substance abuse treatment services provided by PRTFs through a base reimbursement rate for each facility. Because most PRTFs in Kansas do not have on-site facilities or staff who can provide all of the screening and subsequent treatment deemed medically necessary in accordance with EPSDT requirements, PRTFs typically arranged for, and incurred the costs of, additional health care items and services (such as laboratory tests and pharmaceuticals) provided to PRTF residents by outside medical providers. Kansas had no mechanism in place to reimburse PRTFs for such costs.

29. Based on these concerns, and in view of the historical questions raised by CMS concerning the eligibility of services provided by IMDs for FFP, KHPA proposed to

include in the SPA an added per diem component in the PRTF reimbursement rate for "health care services." KHPA discussed this SPA at length with CMS. CMS indicated that it was considering the issue and was open to seeking alternative means to ensure reimbursement for such services. Letter from Timothy Weidler, National Institutional Reimbursement Team, CMS to Marcia Nielsen, Director, KHPA, at 2 (Sept. 27, 2006).

30. In March 2007, CMS approved the proposed amendment to Attachment 4.19-A of the Kansas State plan submitted under transmittal no. 06-09, effective July 1, 2007. Letter from Dennis G. Smith, Director, CMS to Andrew Allison, Acting Director of Medical Policy, KHPA, at 1 (March 7, 2007). The approved SPA discussed requirements for PRTFs and set forth the following limitation: "All Medicaid services furnished to individuals residing in a PRTF are considered content of service. Federal financial participation is not available in expenditures for any other service to a PRTF resident. An individual under age 22 who has been receiving this service is considered a resident of the PRTF until he is unconditionally released or, if earlier, the date he reaches age 22." In light of KHPA's prior discussions with CMS, KHPA understood the reference to "[a]ll" Medicaid services to permit an add-on per diem payment to cover costs incurred by PRTFs for Medicaid services other than mental health and substance abuse treatment services provided to their residents under age 22.[1]

31. In May 2007, the approved SPA contained in transmittal no. 06-09 was superseded by transmittal no. 07-04, also effective July 1, 2007. *Transmittal and Notice of*

[1] The approved SPA in transmittal no. 06-09 also included a "severity index" used to estimate the extent to which a child's behavior resulting "from a serious emotional disturbance [would] increase the utilization of [PRTF] resources required to manage that behavior." This index could serve as a basis for augmenting or diminishing a PRTF's base reimbursement rate, but it was distinct from the add-on payment intended to cover the costs of medically necessary health care services, other than mental health and substance abuse treatment services, provided to children resident in PRTFs.

*Approval of State Plan Material*, SPA #07-04 (May 3, 2007). The superseding SPA largely duplicated the SPA transmitted under no. 06-09, but eliminated the first two sentences of the prior limitation language while maintaining the following sentence: "An individual under age 22 who has been receiving this service is considered a resident of the PRTF until he is unconditionally released or, if earlier, the date he reaches age 22." CMS did not suggest to KHPA that this change was intended to substantively affect the reimbursement that would be available for services provided to children resident in PRTFs. The revision deleted not only the language specifying that all Medicaid services would be considered the content of services provided to PRTF residents, but also the language limiting federal financial participation. All that remained was an explanation of the circumstances under which a child would be considered a "resident of the PRTF." KHPA therefore had no basis to believe that the per diem add-on payment for health care services in the PRTF reimbursement formula previously discussed with CMS was not in fact authorized by the approved SPA.

32. At no time during the review and approval process for this SPA did CMS inform KHPA that its decision to create this add-on payment might result in a disallowance of federal financial participation.

**D. The Disallowance and Appeal to DAB**

33. In a letter dated October 20, 2008, CMS issued a disallowance in the amount of $3,883,143 against KHPA, stating that "the disallowed amount represents FFP for payments for services other than inpatient psychiatric services to residents of a Psychiatric Residential Treatment Facility (PRTF)...for quarters ended September 30, 2007 through June 30, 2008. Your agency did not claim these costs in accordance with Federal statutes, regulations, and guidelines." Letter from James G. Scott, Associate Regional Administrator, CMS Region VII, to Marcia J. Nielsen, Director, KHPA, at 1 (October 20, 2008).

34. KHPA appealed the disallowance to the DAB on December 18, 2008. KHPA submitted evidence to the Board in support of its arguments that the Medicaid statute does not limit federal financial participation to inpatient psychiatric services for children resident in PRTFs, and that CMS approved KHPA's reimbursement formula for PRTFs.

**E. The DAB's Decision**

35. In a decision dated June 23, 2009, the Board upheld the disallowance. *See* DAB No. 2255, Ex. 1, at 2. As it did in the appeals brought by New York, Virginia and Texas, the Board held that the plain wording of the IMD exclusion unambiguously provides that federal funds are available for services provided to children under age 21 residing in IMDs only if those services are provided in and by the IMD. *See id.* at 8-10; *see also In re New York State Department of Health*, DAB No. 2066 (2007); *In re Virginia Department of Medical Assistance*, DAB No. 2222 (Dec. 31, 2008); *In re Texas Health and Human Services Commission*, DAB No. 2237 (April 1, 2009). The Board also concluded that the approved Kansas State plan did not authorize add-on payments to PRTFs for health care services provided to their residents. *See* DAB No. 2255, Ex. 1, at 2.

36. In connection with its appeal to the DAB, KHPA sought to retain the disallowed funds pending a final administrative decision. CMS has not yet withheld the $3,883,143 disallowance upheld by the Board, but the letter notifying KHPA of the disallowance indicated that "the proper amount of the disallowance plus interest computed pursuant to section 1903(d)(5) of the Social Security Act [would] be offset in a subsequent [Medicaid] grant award" if CMS prevailed before the DAB. Letter from James G. Scott, Associate Regional Administrator, CMS Region VII, to Marcia J. Nielsen, Director, KHPA, at 2-3 (October 20, 2008).

## COUNT I

### (Arbitrary and Capricious Agency Action, 5 U.S.C. § 706(2)(A))

37. Plaintiff repeats and re-alleges every allegation in paragraphs 1 through 36 as if fully set forth herein.

38. The DAB's decision constitutes final agency action under the APA, 5 U.S.C. § 704.

39. Under the APA, 5 U.S.C. § 706(2)(A), this Court is required to hold unlawful and set aside final agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

40. Congress has long supported federal funding for all Medicaid services provided to children, and for all Medicaid services provided to persons aged 65 and over in IMDs. In adding inpatient psychiatric services to children as a Medicaid benefit in 1972, Congress did not intend to limit the coverage for children in IMDs only to inpatient psychiatric services.

41. The DAB's decision, therefore, is inconsistent with the Act and the intent of Congress.

42. Moreover, as reflected by CMS communications with KHPA and the SPAs approved under transmittals no. 06-09 and 07-04, CMS authorized the PRTF reimbursement formula proposed by KHPA.

43. Accordingly, the Defendants' actions are arbitrary, capricious, an abuse of discretion, and/or not in accordance with law, in violation of the APA.

**COUNT II**

**(Agency Action Without Observance of Procedure Required by Law, 5 U.S.C. § 706(2)(D))**

44. Plaintiff repeats and re-alleges every allegation in paragraphs 1 through 36 as if fully set forth herein.

45. Under the APA, 5 U.S.C. § 706(2)(D), this Court is required to hold unlawful and set aside agency action that is without observance of procedure required by law.

46. The APA provides that federal agencies may issue substantive rules only after notice-and-comment rulemaking. 5 U.S.C. § 553.

47. Federal law provides that persons may not be adversely affected by an agency statement of general policy or interpretation of general applicability unless they have had actual and timely notice of that policy statement or interpretation. 5 U.S.C. § 552(a)(1)(D).

48. Defendants' position that Medicaid will not cover the costs of services provided to children in IMDs, other than inpatient psychiatric services, amounts to a substantive rule, or, at the very least, is an agency statement of general policy or interpretation of general applicability.

49. Defendants have never issued any rule through notice-and-comment rulemaking expressly stating that they will provide federal financial participation only in the costs of inpatient psychiatric services for children in IMDs, and not in any other Medicaid services. They have never published any such statement in the Federal Register. None of Defendants' formally promulgated regulations or other agency guidance gave KHPA actual and timely notice that Defendants would cover only the costs of inpatient psychiatric services for children in IMDs, and no other medically necessary services, including professional services and medication.

50. To the contrary, in fact, CMS indicated in communications with KHPA that KHPA could use a supplementary per diem payment to cover the costs of medically necessary services — not limited to inpatient psychiatric services — provided to residents of PRTFs.

51. KHPA could have avoided the disallowance if it had had adequate prior notice of Defendants' position.

52. By taking a disallowance against KHPA without engaging in notice-and-comment rulemaking, or otherwise providing actual and timely notice of CMS's interpretation of the scope of the medical assistance available to children in IMDs, Defendants have acted without observance of procedure required by law.

## REQUEST FOR RELIEF

WHEREFORE, KHPA asks this Court to award the following relief:

### A. Declaratory Judgment

1. KHPA asks this Court to issue a declaratory judgment that so long as a Medicaid-eligible child is receiving inpatient psychiatric services, he or she is not subject to the IMD exclusion, and federal funding is available for all Medicaid services he or she receives.
2. KHPA asks this Court to issue a declaratory judgment that Defendants failed to engage in required notice-and-comment rulemaking setting forth their position that the federal government will not share in the cost of any services, other than inpatient psychiatric services, provided to children in IMDs. Alternatively, KHPA asks this court to issue a declaratory judgment that Defendants failed to observe procedure required by law, because, prior to taking adverse action against KHPA, they did not give KHPA actual and timely notice of their position.

3. KHPA further asks this Court to issue a declaratory judgment that DAB Decision No. 2255, and the underlying disallowance imposed against KHPA, are unlawful and without effect.

**B. Injunctive Relief**

1. KHPA asks this Court to enjoin Defendants and their agents, employees, successors in office, and all persons acting in concert or participation with them from enforcing or giving effect to DAB Decision No. 2255 or the underlying disallowance.
2. KHPA further asks this Court to require Defendants to rescind or restore to Kansas, as appropriate, the full amount of the disallowance (plus interest, if any).

**C. Other Relief**

KHPA asks this Court to:

1. Order a speedy hearing on this matter and advance it on the calendar;
2. Award KHPA all costs and fees incurred for this action;
3. Retain jurisdiction over this action for such additional and supplemental relief as may be required to enforce the order and judgment; and
4. Award KHPA such other relief as may be just and proper.

Respectfully submitted,

Caroline M. Brown (D.C. Bar No. 438342)
Laura E. Schattschneider (D.C. Bar No. 976423)
Julie G. Vogtman (D.C. Bar No. 485427)*
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2401
(202) 662-6000

*Counsel for Plaintiff*

* Admitted to the Bar of the District of Columbia, but not admitted to practice before this Court. Petition for admission is pending.