IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| KANSAS HEALTH POLICY AUTHORITY, | ) ) ) | |
| *Plaintiff*, | ) ) | CASE NO. 1:09-cv-001587 BJR |
| v. | ) ) | |
| UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, JUDGMENT et al., | ) ) ) ) ) | ORDER GRANTING DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| *Defendants*. | ) | |

This matter comes before the court on cross motions for summary judgement. The court has reviewed the relevant documents filed by the parties and, being fully informed, finds and rules as follows:

## I. INTRODUCTION

This case is designated related to *Virginia Dept. of Medical Assistance Services v. U.S. Dept. of Health and Human Services*, ___ F.Supp.2d___, 2011 WL 1585828 (D.D.C. April 27, 2011) (No. 1:09-CV-00392 BJR). While the facts of the cases vary, the legal issues are virtually identical. The central issue is how much the federal government, through Medicaid, should share in the cost of medical care for children residing in institutions for mental diseases ("IMDs").

1

Defendants, the United States Department of Health and Human Services ("HHS") and Kathleen Sebelius as the Secretary HHS, contend that the Medicaid statute is clear—with respect to children residing in IMDs, federal funding is available only for psychiatric services provided in and by the IMDs. Plaintiff, Kansas Health Policy Authority ("KHPA"), claims that the Medicaid statute is ambiguous and Defendants' interpretation of it is arbitrary and capricious in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(20(A).[1] KHPA also alleges that Defendants took agency action without observance of procedure required by law pursuant to APA, 5 U.S.C. § 706(2)(D).

This court ruled in favor of Defendants in *Virginia*. *See Virginia*, ___ F.Supp.2d___, 2011 WL 1585828 (holding that the Medicaid statute and implementing regulations unambiguously provide that if a child is an IMD resident, federal funding is only available for inpatient psychiatric services, and substantial evidence existed in the record that the States had timely, actual notice of how HHS interpreted the statute). The court will not revisit its ruling on this issue. Instead, the court will address KHPA's remaining claim: whether the federal Centers for Medicare and Medicaid Services ("CMS") approved an amendment to Kansas' State Medicaid plan permitting "add-on" payments to IMDs (over and above the facilities' per diem rates) to cover the costs of the health care services at issue.[2]

## II. PROCEDURAL HISTORY

KHPA challenges a determination by CMS disallowing $3,883,143 in federal funding that KHPA claimed for medical services provided to children residing in Psychiatric Residential

---

[1] KHPA is the designated single state agency for medical assistance for the state of Kansas. (AR000038.).

[2] CMS was the agency within HHS that is tasked with administering the Medicaid program during the relevant time period.

2

Treatment Facilities ("PRTF").[3] *See* Dkt. No. 23 at 19. CMS based the disallowance on an Office of the Inspector General ("OIG") audit of KHPA's claims for services provided to children in PRTFs during the time period September 30, 2007 through June 30, 2008. *Id*. citing AR000101-03. KHPA appealed the disallowance to the HHS Departmental Appeals Board (the "DAB") on December 18, 2008.[4] The DAB upheld CMS's determination in Decision No. 2255, dated June 23, 2009. (AR00001-AR00022.). On August 20, 2009, KHPA filed this suit seeking declaratory and injunctive relief and reversal of DAB Decision No. 2255.[5]

The parties agree that discovery is not appropriate and that the case can be resolved on the administrative record by dispositive motions. Accordingly, cross motions for summary judgment have been filed.

### III. BACKGROUND

*A.     Statutory and Regulatory Background*

The Medicaid program was established in 1965, under Title XIX of the Social Security Act ("SSA" or "Act"), as a cooperative state-federal program that enables States to provide medical assistance to families with dependent children, the elderly, and disabled individuals whose income and resources are inadequate to pay for necessary medical services. *See* SSA § 1901 (42 U.S.C. § 1396). The Medicaid program is administered by each State in accordance with a Medicaid State plan that is reviewed and approved by the Secretary. *See id*. The cost of

---

[3] PRTFs are non-hospital facilities that, by regulation, may provide inpatient psychiatric treatment to children in Medicaid. *See* Dkt. No. 23 at 16.

[4] The DAB is an adjudicatory body to whom the Secretary has delegated authority to review disallowances under the Title XIX of the Social Security Act, or Medicaid. *See* 45 C.F.R. Part 16, Appendix A, ¶ B (a)(1).

[5] A final disallowance determination is subject to judicial review as a final agency action under 5 U.S.C. § 704. *See New Mexico Dep't of Information Technology v. U.S. Dep't of Health & Human Servs*., 577 F.Supp.2d 347, 351 (D.D.C. Sept. 22, 2008).

providing Medicaid services is shared by each State and the federal government. SSA § 1903(a)(1) (42 U.S.C. § 1396b(a)(1)).

Section 1903(a)(1) of the Act makes federal funding available on a quarterly basis to States for amounts expended "as medical assistance under the State plan . . . ." SSA § 1903(a)(1). Section 1905(a) defines "medical assistance" as payment for listed covered services, but does not include "any such payments" for any individual under age 65 who is a patient in an IMD "except as otherwise provided in paragraph (16)." SSA § 1905(a). Paragraph (16) states that payment is available only for "inpatient psychiatric hospital services for individuals under age 21, as defined in subsection (h)" of section 1905. SSA § 1906(a)(16).

Subsection 1905(h) states that "'inpatient psychiatric hospital services for individuals under age 21' includes only—inpatient services which are provided" in a "psychiatric hospital" or other qualifying "inpatient setting[s]". *See* SSA § 1905(h)(1). The implementing regulations also state that federal funding is only available for inpatient services provide by a qualifying hospital, hospital program, or facility. *See, e.g.,* 42 C.F.R. §§ 435.1008, 436.1004, 440.160 and 441.13(a).

*B. Factual Background*

In 2001, the OIG began auditing States' claims for federal participation in the cost of providing medical assistance to children residing in IMDs. (Dkt. No. 23 at 14-15.). The OIG audited seven States and eventually recommended disallowances for all federal funding that was provided to each State for medical care—other than inpatient psychiatric services—provided to children in IMDs. *Id*. Officials in four of the seven States did not object to the disallowances. *See* DAB Decision No. 2222 (Dec. 31, 2008) 2008 WL 5510324 (H.H.S.), incorporated into DAB Decision No. 2255 at AR000010. However, New York, Virginia and Texas contested the audit

4

results. In 2007, New York appealed the disallowance to the DAB, raising substantially similar legal grounds to those raised here. *In re New York State Department of Health*, DAB Decision No. 2066 (Feb. 8, 2007), 2007 WL 522134 (H.H.S.). The DAB rejected New York's claim, holding that the plain meaning of the IMD exclusion unambiguously provides that federal funding is available for services provided to children residing in IMDs only if those services are provided in and by the IMD. Virginia also appealed, again on substantially similar grounds, and the DAB again upheld CMS' interpretation of the IMD exclusion and upheld the disallowance (with the possibility of some modification pending further substantiation of claims from Virginia).[6] *In re Virginia Department of Medical Assistance*, DAB Decision No. 2222 (Dec. 31, 2008), 2008 WL 5510324. In 2009, the DAB rejected Texas' appeal, and in doing so, affirmed its holdings in *New York* and *Virginia*. *Texas Health & Human Servs. Comm'n*, DAB Decision No. 2237 (2009), 2009 WL 1176322 (H.H.S.).

Against this backdrop, in 2006, Kansas sought to convert some of its residential treatment facilities for foster children and children in the juvenile justice system with behavioral and mental health needs into PRTFs available to serve all Medicaid children with mental health needs. (Dkt. No. 23 at 16.). KHPA claims that most of its PRTFs do not have on-site facilities or staff who can provide all of the screening and subsequent treatment deemed medically necessary in accordance with Medicaid requirements.[7] *Id.* at 17. Instead, the PRTFs typically arrange for, and incur the cost of, additional health care service (such as laboratory tests and

---

[6] Virginia sought relief in federal court; this court affirmed the DAB's decision and granted summary judgment in favor of CMS. *See Virginia*, ___ F.Supp.2d___, 2011 WL 1585828. Virginia has filed a notice of appeal. *See Virginia*, No. 1:09-cv-00392 at Dkt. No. 30.

[7] Specifically, KHPA is referring to the comprehensive array of services mandated by the 1967 amendment, Early and Periodic Screening, Diagnostic, and Treatment ("EPSDT"), to Title XIX.

5

pharmaceuticals) by outside medical providers. *Id*. Based on the OIG's previous audits, KHPA was concerned that federal funding would not be available for these additional costs. *Id*.

KHPA claims that it approached CMS with its concern. KHPA claims, and CMS does not dispute, that there were extensive discussions between the parties during 2006 and 2007 regarding this issue. KHPA states that it sought an amendment to its state Medicaid plan that would allow for federal funding for not only inpatient psychiatric services provided by the PRTFs but also for other non-psychiatric and/or outpatient medical services provided to PRTF residents under age 21. *Id*. at 17. KHPA proposed that the amendment authorize an add-on per diem component to the PRTF reimbursement base rate for the additional health care services. *Id*.

Thereafter, KHPA submitted to CMS proposed amendment to Attachment 4.19-A of Kansas' Medicaid State plan ("Transmittal No. 06-09"). (AR000005-AR000006.). Transmittal No. 06-09 was meant to implement the reimbursement methodology for the PRTFs. (AR000096.). The actual language proposed by KHPA is not in the record. (AR000005.).

However, a letter to KHPA dated September 27, 2006 from CMS reflects that the proposed reimbursement formula included a component for "a per diem add-on intended to reimburse facilities for the cost of 'health care services' which must be incurred by facilities for their residents." (AR000005 citing AR000092.). The proposal defined "health care services" as "all medically necessary health care services covered by Medicaid excluding mental health and substance abuse treatment services (which are already included in the base reimbursement rate)." *Id*. The CMS letter stated that CMS was still evaluating the proposal and needed further information to assist in that evaluation, specifically, information "describing the nature of these 'health care services', the expected frequency/cost of these services, who the provider of the services will be, and how the facilities will arrange and pay for the services." *Id*. The record does

6

not contain evidence of what information, if any, KHPA provided in response to CMS' request for more information. (AR000006.).

A final version of Transmittal No. 06-09 was approved by CMS in March 2007 with an effective date of July 1, 2007. *Id*. The approved amendment discussed the requirements for PRTFs and set forth the following limitation:

> All Medicaid services furnished to individuals residing in a PRTF are considered content of the service. Federal financial participation is not available in expenditures for any other service to a PRTF resident. An individual under age 22 who has been receiving this service is considered a resident of the PRTF until he is unconditionally released or, if earlier, the date he reaches age 22.

(Dkt. No. 23 at 18 quoting AR000098.).

Even after Transmittal No. 06-09 was approved, KHPA and CMS continued to have discussions regarding reimbursement for the additional health care services. (Dkt. No. 23 at 18.). There are no documents in the record reflecting these discussions. *Id*. However, in May 2007, a new amendment to the Kansas Medicaid State plan, Transmittal No. 07-04, was approved. *Id*. It superseded Transmittal No. 06-09 and had the same effective date of July 1, 2007. *Id*. Accordingly, Transmittal No. 06-09 never went into effect. (DAB Decision No. 2255 at AR000019.). Transmittal No. 07-04 largely duplicated Transmittal No. 06-09, but deleted the first two sentences of the above-quoted limiting language, so that the Limitations Section now reads: "An individual under age 22 who has been receiving this service is considered a resident of the PRTF until he is unconditionally released or, if earlier, the date he reaches 22." (AR000081, AR000100.).

## IV. LEGAL ANALYSIS

*A. Standard of Review*

Under Federal Rule of Civil Procedure 56, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C.Cir.1995). "Summary judgment is an appropriate procedure for resolving a challenge to a federal agency's administrative decision when review is based upon the administrative record." *Fund for Animals v. Babbitt*, 903 F.Supp. 96, 105 (D.D.C.1995) (citing *Richards v. Immigration & Naturalization Serv.*, 554 F.2d 1173, 1177 (D.C.Cir.1977)). Because this case involves a challenge to a final agency action, the court's review is limited to the administrative record. *Fund for Animals*, 903 F.Supp. at 105 (citing *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). Therefore, this case may be appropriately resolved on cross-motions for summary judgment.

Under the APA, the court is to set aside an agency action that is "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2). "'The party challenging an agency's action as arbitrary and capricious bears the burden of proof.'" *City of Olmsted Falls v. F.A.A.*, 292 F.3d 261, 271 (D.C.Cir.2002) (quoting *Lomak Petroleum, Inc. v. FERC*, 206 F.3d 1193, 1198 (D.C.Cir.2000)). To survive the "arbitrary and capricious" standard, an agency must "'examine the relevant data and articulate a satisfactory explanation for its action, including a rational connection between the facts found and the choice made." *PPL Wallingford Energy LLC v. Federal Energy Regulatory Comm'n*, 419 F.3d 1194, 1198 (D.C.Cir.2005) (quoting *Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut.*

8

*Auto. Ins. Co.*, 463 U.S. 29, 43, (1983) (internal punctuation omitted)). This standard of review is highly deferential to the agency, so that a court need not find that the agency's decision is "the only reasonable one, or even that it is the result [the Court] would have reached had the question arisen in the first instance in judicial proceedings." *Am. Paper Inst., Inc. v. Am. Elec. Power Serv. Corp.*, 461 U.S. 402, 422, (1983). The court is not entitled to substitute its judgment for that of the agency. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971) *overruled on unrelated grounds by Califano v. Sanders*, 430 U.S. 99 (1977). Finally, an agency decision must generally be affirmed on the grounds stated therein, and a reviewing court may not attempt to supply "a reasoned basis for the agency's action that the agency itself has not given." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43. Consistent with this review standard, judicial review is confined to the full administrative record before the agency at the time the decision was made. *Envtl. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 284 (D.C.Cir.1981).

### B. Kansas' Medicaid State Plan Does Not Permit Comprehensive Reimbursement for Children Residing in PRTFs

KHPA argues that its negotiations with CMS over the Kansas Medicaid plan amendment in 2006-2007 resulted in an understanding between the parties that the disallowed payments were permitted. (Dkt. No. 27 at 16.). KHPA asserts that "there were extensive discussions between the parties during 2006 and 2007" in which they "tr[ied] to craft [an amendment] that would allow for" federal funding for health care services provided to children residing in IMDs, in addition to inpatient psychiatric services. (AR000080.).

KHPA claims that the very reason it requested authorization for an add-on per diem component to the proposed PRTF rates is because it was concerned about the costs PRTFs were incurring for necessary acute care services provided outside the facilities. KHPA points out that CMS acknowledged these concerns in its September 27, 2006 letter to KHPA, and asked several

questions about the proposed add-on per diem rate. (AR000090-95.). Based on this, KHPA claims it "understood its proposed [add on] per diem component to the PRTF rate to have been authorized by [Transmittal No. 06-09] and then later amended [by Transmittal No. 07-04]…" (Dkt. No. 23 at 42.).

KHPA raised this same argument before the DAB. (AR000018.). The Board found that "while there is evidence that the reimbursement method originally *proposed* by Kansas included an "add-on" payment for other health care services, that evidence also shows that CMS raised questions about the proposal. More important, Kansas points to nothing in the plan language *as approved* that could reasonably be interpreted as providing for such an "add-on" payment." *Id*. (emphasis in original).

The DAB further noted that KHPA's reliance on the language in the "Limitations" section of the amendment as originally proposed is misplaced. (AR000019.). This is because, the DAB states, the language in question—*All Medicaid services furnished to individuals residing in a PRTF are considered content of the service. Federal financial funding is not available in expenditures for any other service to a PRTF resident*—is ambiguous. *Id*. "[S]tating that 'all Medicaid services' are part of the 'content of service' does not necessarily imply that an add-on payment will be made for services not covered by the facility's per diem rate. Instead, it could mean that PRTFs were required to provide any medically necessary services as part of the resident-related treatment reimbursed through the per diem rate." *Id*. In addition, the Board noted, to the extent that health care services are provided to a child in an IMD by a provider other than the IMD, the services would not be Medicaid covered services. *Id*.

The DAB concluded its decision by stating: "while Kansas makes assertions regarding its belief that it had CMS approval for making 'add-on' payments to cover the costs of the services

at issue, Kansas provides absolutely no evidence to show that it in fact had such a belief, much less to show that such a belief would be reasonable in light of the discussions between Kansas and CMS and the plan language ultimately approved." (AR000020.). Accordingly, the DAB found that KHPA had not met its burden to demonstrate that its State Medicaid plan permitted comprehensive reimbursement for services to children in IMDs. *Id*.

In accordance with *Robinson v. NTSB*, 28 F.3d 210 (D.C.Cir. 1994), this court must defer to the DAB's decision if there is evidence that "a reasonable mind might accept as adequate to support the conclusion." *Id*. at 215 quoting *Throckmorton v. National Transp. Safety Bd*., 963 F.2d 441 (D.C.Cir. 1992). This court finds that the DAB's decision is entirely reasonable and cannot be characterized as arbitrary or capricious. Upon review of the administrative record, it is clear that the parties did not have a meeting of the minds with regard to KHPA's proposed add-on per diem rate. KHPA admits as much, stating that it "seemed" to have received authority for including the additional costs, but admitting that the amendment is "ambiguous." (Dkt. No. 27 at 17; AR000080.). The DAB generally gives deference to a state's interpretation of its own state plan. *See Missouri Dept. of Social Services*, DAB Decision No. 1412 (1993), 1993 WL 742589 (H.H.S.). However, the interpretation must be reasonable in light of the language of the plan as a whole. *Id*. Such is not the case here. To the contrary, KHPA can point to no language in the State plan that clearly supports its position.

In addition, KHPA did not present any evidence to show that the disallowed health care expenses could reasonably be considered part of the "inpatient psychiatric facility services" provided in and by the PRTFs. (AR000020.). KHPA has the burden of demonstrating that such expenses were allowable. *See, e.g., New York State Dept. of Social Services*, DAB Decision No. 204 (1981) 1981 WL 158321 (H.H.S.). KHPA failed to meet this burden.

11

## V. CONCLUSION

Based on the foregoing, it is HEREBY ORDERED that Plaintiff's Motion for Summary Judgment is DENIED, and Defendants' Cross Motion for Summary Judgment is GRANTED. Plaintiff's request for declaratory and injunctive relief is DENIED. This case shall be DISMISSED in its entirety.

DATED this 22nd day of July, 2011.

A
Barbara Jacobs Rothstein
U.S. District Court Judge